IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:25-mj-00421-DLM |
| | ) | |
| **JOHN ALBERT CARRILLO JR.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>UNITED STATES' MOTION TO DETAIN</u>

Defendant stands accused of the very serious crimes of Aggravated Sexual Abuse under 18 U.S.C. §2241(c), which carries a mandatory minimum of 30 years in prison up to life, and Sexual Abuse of a Minor under 18 U.S.C. §2243(a), which carries a term of imprisonment to no more than 15 years. If convicted on these charges, defendant could serve a life sentence. Additionally, the charge under 18 U.S.C. §2241(c) creates the rebuttal presumption that there is no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. §3142(e)(3)(E). The nature and circumstances of defendant's crime show that he is sexually attracted to children. Moreover, the facts show that defendant is willing to use force to sexually assault children. A dangerous combination. Furthermore, defendant has shown the ability to destroy evidence. Given the reasons as argued below, defendant is danger to the community and is flight risk.

## I.     LAW REGARDING PRE-TRIAL DETENTION

The Bail Reform Act "establishes a two-step process for detaining an individual before

1

trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (per curiam). At step

one, the court must decide the "threshold" question whether 18 U.S.C. § 3142(f) authorizes

detention, *see Ailon-Ailon*, 875 F.3d at 1337, such as where the "case...involves...a serious risk that

[the defendant] will flee," 18 U.S.C. § 3142(f)(2)(A). "If the court determines that there is such a

risk, the government must prove at the second step" that no "'condition or combination of

conditions' ... 'will reasonably assure the [defendant's] appearance ... as required [as well as] the

safety of any other person and the community.'" *Ailon-Ailon*, 875 F.3d at 1336 (quoting 18 U.S.C.

§ 3142(f)).  Even absent a flight risk, danger to the community alone is a sufficient reason to order

pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

To determine whether there are conditions that can reasonably assure a defendant's

appearance at trial and the safety of the community, the Court shall consider:

(1)     the nature and circumstances of the crime charged;
(2)     the weight of the evidence against the defendant;
(3)     the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and
(4)     the nature and seriousness of the danger to the community or to an individual that would be posed by release.

*See* 18 U.S.C. § 3142(g).

When asserting that there is a risk the defendant will not appear, the Government bears the

burden of proving that no set of conditions can reasonably assure a defendant's appearance, but

only by a preponderance of the evidence. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th

Cir. 2003). However, the government must prove by clear and convincing evidence that the

defendant is danger to the community to justify pretrial detention. *See id*. If the Court finds either

standard is satisfied, it "shall order the detention of the [defendant] before trial." 18 U.S.C. §

3142(e)(1); *See also United States v. Gonzalez-Sierra*, 2021 WL 6050385, *1 (D.N.M. Dec. 21, 2021) (unpublished). A detention order must include "written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1); *See also* Fed. R. App. P. 9(a)(1); *Cisneros*, 328 F.3d at 617.

Section 3142 further creates a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed" certain enumerated offenses, including the offense with which defendant has been charged. *See* 18 U.S.C. §3142(e)(3)(E); *see also United States v. Campas*, 2024 WL 1526286, *1 (10th Cir. 2024) (unpublished). Defendant may rebut this presumption by producing "some evidence" that his appearance could be assured and that he would not be a danger to the community. *Id.,* (cited from *United States v. Stricklin*, 942 F.2d 1353, 1355 (10th Cir. 1991)). However, even if defendant meets this burden, "the [statutory] presumption [of detention] remains a factor by the district court in determining whether to release or detain." *Id.* Regardless of the presumption's effect, "the burden of persuasion regarding risk-of-flight and danger to the community remains with the government." *Id.* at 1354-55.

## II.    ARGUMENT

Given defendant's conduct in this case, as outlined in the criminal complaint (Doc. 1), he poses a significant danger to the community and should be detained. Additionally, given the extremely serious charges and the lengthy term of incarceration defendant faces, he has every

reason to flee pending trial[1]. A review of the relevant 18 U.S.C. §3142(g) factors reveals the only way to protect the public and ensure defendant's presence at trial is to detain him.

### 1. *Nature and circumstances of the offense.*

Defendant sexually assaulted Jane Doe (a fifteen-year-old minor) by using his size and strength to overpower her while he penetrated her vagina with his fingers. Prior to the sexual assault, Jane Doe cried and begged for defendant to stop. Insomuch as Jane Doe's words were powerless to deter defendant, so too were her efforts to push him off of her or remove his hands from her body. Despite Jane Doe's resistance, Defendant reached all the way under Jane Doe's pants and started touching her vagina. Two eyewitnesses walked in on defendant amidst his sexual assault of Jane Doe. These witnesses saw defendant's hand underneath Jane Doe's pants "past the knuckles" and "inside her private parts." Defendant was caught in the act. Once caught, he tried to flee, told the witnesses he wasn't a pedophile, and attempted to destroy evidence. As soon as the witnesses walked in on defendant, he stopped sexually assaulting Jane Doe and immediately searched for his car keys and pants to leave. Defendant told the witnesses that he "wasn't a pedophile." A third eyewitness saw defendant enter the kitchen and aggressively start washing his hands. She too heard defendant state that he "wasn't a pedophile." These witnesses called the Bureau of Indian Affairs ("BIA") to investigate. Jane Doe was interviewed by BIA, performed a SANE exam, and conducted a forensic interview. She confirmed that defendant inserted the tip of

---

[1] If convicted of 18 U.S.C. §2241(c) at trial, defendant faces a mandatory minimum of 30 years imprisonment up to life. If convicted of 18 U.S.C. §2243(a) at trial, defendant faces imprisonment up to 15 years.

his finger into her private parts that she uses to urinate. The SANE examiner later swabbed this area for potential DNA.

On February 14, 2025, leading up to defendant's sexual assault, Jane Doe and her father traveled to the Mescalero/Ruidoso area to visit a nearby landmark. Their car got stuck and they called defendant to help them get out. Defendant arrived intoxicated and wasn't able to get the car unstuck. Defendant, Jane Doe, her father, and another male went to the casino. At the casino, more alcohol was consumed by the men. Afterwards, they all went back to defendant's house to drink more. Since it was getting late, and Jane Doe's father's car was still stuck, they decided to stay the night at defendant's house. At 3:00am, Jane Doe was asleep next to her father. Defendant was heavily intoxicated when he woke up Jane Doe by rubbing her leg and taking a blanket off of her. He told her to meet him outside. While outside, defendant motioned for Jane Doe to get into his car so she could "get some dick." Jane Doe was cold and disgusted by defendant's behavior. She went back inside and returned to the area where her dad was sleeping. Although Jane Doe was right next to her father while he was asleep, defendant continued his pursuit to sexually assault her. Defendant followed Jane Doe back into the bedroom, got on the mattress with Jane Doe and her father, and began rubbing Jane Doe's leg. Defendant was using his thumb on Jane Doe's private parts over the pants. Jane Doe, a small teenage female, was no match for defendant's sexual advances. She begged defendant to stop and tried to shove him off of her. Jane Doe got on her phone and went to Snapchat to send defendant messages to leave her alone. She even showed him these messages. Defendant took her phone and typed something to the effect of "let me just finish real quick." Jane Doe continued to fight him off. Defendant overpowered Jane Doe by inserting his fingers into her vagina. As Jane Doe accounts in her interviews, she believed that defendant

was trying to rape her. Defendant's sexual assault by force of Jane Doe is a nature and circumstance that makes him a danger to the community if released.

## 2. *The weight of the evidence.*

The weight of the evidence in this case is strong. The United States has three eyewitnesses that either saw the sexual assault as it was happening and/or the aftermath of defendant's actions once he was caught. Two witnesses barged into the bedroom when they heard the struggle between Jane Doe and defendant. They saw firsthand defendant sexually assaulting Jane Doe. These witnesses also heard defendant state that "he wasn't a pedophile." Moreover, another witness saw defendant aggressively washing his hands. The same hands defendant had just used to sexually assault Jane Doe with. Jane Doe's statements to the BIA and forensic interview have been consistent. As stated by Jane Doe, Defendant sexually assaulted her and tried to rape her. The weight of the evidence in this case is overwhelming and the likelihood of conviction is high. The weight of the evidence strongly supports detention.

## 3. *The nature and seriousness of the danger to any person or the community posed by defendant.*

Defendant has shown that he is attracted to underage children. Further, the evidence shows that defendant is willing to use force to sexually assault children. A dangerous combination. Defendant also has shown that he is willing to destroy evidence of his criminal activities. After the sexual assault of Jane Doe, defendant went directly to kitchen to wash his hands to remove evidence. Defendant's sexual attraction toward children, his violence in achieving those means, and his past actions of destroying evidence, make him a serious danger to Jane Doe and other children in the community.

### III.    CONCLUSION

Defendant faces extremely serious charges that are supported by very strong evidence and carry significant minimum and maximum penalties with a likely guideline range of life imprisonment. Considering this, defendant has no incentive to appear for court, if he is released. Further, as should be abundantly apparent from this motion, defendant poses an extreme danger to the community, if released. Considering all the factors in their totality, including: 1) the egregious nature of the defendant's sexual assault of Jane Doe by force; 2) the significant period of incarceration defendant faces on charges supported by strong evidence; 3) the presumption of detention under 18 U.S.C. § 3142(e)(3)(E); and 4) defendant's past conduct of destroying evidence in this case;  there are no conditions that can be fashioned to protect the safety of the community from defendant or to reasonably assure his future appearances in court. Accordingly, the United States respectfully asks the Court to detain defendant pending trial.

Respectfully submitted,

HOLLAND S. KASTRIN
Acting United States Attorney

***Electronically Filed 3/14/25***
JACKSON K. DERING V
Assistant United States Attorney
200 N. Church St.
Las Cruces, NM 88011

I HEREBY CERTIFY that I electronically
filed the foregoing using the CM/ECF
system, which will send notification
defense counsel of record.

*/s/*
JACKSON K. DERING V
Assistant United States Attorney